Arthur B. Berger (6490)
Michael K. Erickson (12503)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
aberger@rqn.com
merickson@rqn.com

Steven L. Procaccini (*Pro Hac Vice Admission Pending*)
Christopher Ko (*Pro Hac Vice Admission Pending*)
NISSENBAUM LAW GROUP, LLC
2400 Morris Avenue, Suite 301
Union, New Jersey 07083
Telephone: (908) 686-8000
Facsimile: (908) 686-8550
sp@gdnlaw.com
ck@gdnlaw.com

*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| SCOTT CAWTHON, an individual; SCOTTGAMES, LLC, a Texas limited liability corporation;<br><br>          *Plaintiffs,*<br><br>          v.<br><br>XIUPAN NG aka ALAN HONG, an individual,<br>          *Defendant.* | **COMPLAINT AND JURY DEMAND**<br><br>Civil No. _____ |

Plaintiffs, Scott Cawthon ("**Mr. Cawthon**") and Scottgames, LLC ("**Scottgames**") (collectively, "**Plaintiffs**"), for their Complaint against defendant Xiupan Ng also known as Alan Hong ("**Defendant**"), hereby allege as follows:

## SUMMARY OF THE CASE

1.      This action arises under the provisions of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*; Lanham Act of 1946, 15 U.S.C. § 1051 *et seq.*; the Digital Millennium Copyright Act of 1998 ("**DMCA**"), 17 U.S.C. § 512; and the Anticybersquatting Consumer Protection Act of 1999 ("**ACPA"**), 15 U.S.C. § 1125(d).

2.      As set forth in more detail below, Plaintiffs hold intellectual property relating to the "Five Nights at Freddy's" computer game/mobile application series, which includes the following four games for personal computers and mobile devices: (a) "Five Nights at Freddy's"; (b) "Five Nights at Freddy's 2"; (c) "Five Nights at Freddy's 3"; and (d) "Five Nights at Freddy's 4" (collectively, **Five Nights**").

3.      This intellectual property includes copyrights for various depictions of the Five Nights characters "Freddy Fazbear," "Bonnie the Rabbit," "Foxy the Pirate" and "Chica the Chicken" (collectively, the "**Copyrighted Characters**"). *See infra* paras. 55, 58, 61, 64.

4.      Plaintiffs' intellectual property has been further licensed to produce merchandise including, without limitation, licensed plush and/or stuffed toys of the Copyrighted Characters. *See infra* paras 72-74.

5.      This is an action arising from Defendant's willful, knowing and unlawful sale, reproduction, promotion and distribution of Five Nights merchandise, namely <u>unlicensed</u> plush

and/or stuffed toy reproductions (the "**Infringing Toys**") of the Copyrighted Characters. *See infra* paras 77, 79, 81, 83.

6.      Defendant registered the domain name www.FNAFToys.com (the "**Infringing Domain Name**") in violation of Plaintiffs' intellectual property, as discussed below.

7.      Defendant has used and is using the Infringing Domain Name for the sale of the Infringing Toys, as discussed below.

8.      Defendant has offered and is offering the Infringing Toys for sale through pages and/or online stores hosted by both eBay Inc. ("**eBay**") and Etsy, Inc. ("**Etsy**").

9.      Defendant has offered and is offering the Infringing Toys for sale for profit and without Plaintiffs' authorization or consent and despite Plaintiffs' demand that Defendant cease producing, promoting and distributing the Infringing Toys.

10.     By unlawfully producing, promoting and distributing Five Nights merchandise, including the Infringing Toys, Defendant is infringing upon Plaintiffs' intellectual property rights.

## THE PARTIES

11.     Mr. Cawthon is an individual with a principal residential address within Salado, Texas.

12.     Scottgames is a limited liability company organized under the laws of Texas with a principal place of business of c/o Nissenbaum Law Group, LLC, 2400 Morris Avenue, Suite 301, Union, NJ 07083.

13.     Scottgames is the contracting entity through which Mr. Cawthon's intellectual property is licensed to third parties.

14.     Mr. Cawthon is the sole member of Scottgames.

15.     Upon information and belief, Defendant is an individual, an owner of the Infringing Domain Name and a seller of the Infringing Toys with a principal address located at 646 S. Main St. #126, Cedar City, Utah 84720.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 & 1338. Plaintiffs' claims arise under the Copyright Act (17 U.S.C. § 501), the DMCA (17 U.S.C. § 512), the ACPA (15 U.S.C. § 1125(d)) and the Lanham Act (15 U.S.C. § 1114 & 1125).

17.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400 since Defendant resides in this District and acts of infringement alleged herein with respect to the Defendant occurred in this District.

18.     This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant is a resident of this District; the acts of infringement alleged herein occurred in this District; and Defendant has caused injury to Plaintiffs and their intellectual property within this District.

19.     Furthermore, this Court has personal jurisdiction over Defendant since, upon information and belief, Defendant submitted a counter-notice to Etsy pursuant to the DMCA, 17 U.S.C. § 512 (g)(3).

20.     Under the DMCA, 17 U.S.C. § 512 (g)(3)(D), any statutory counter-notice that Defendant submitted to Etsy would have included his consent to jurisdiction of the Federal District Court for the district in which the address Defendant provided is located.

## THE FIVE NIGHTS GAMES

21.     On or about August 8, 2014, Mr. Cawthon released the first Five Nights computer game/mobile application entitled "Five Nights at Freddy's" (the "**Original Game**").

22.     The Original Game is a survival horror game for personal computers and mobile devices about the night security guard at a fictional pizza restaurant. The Copyrighted Characters are animatronic animals that entertain children at the restaurant. However, the Copyrighted Characters move around the restaurant at night and attack the night security guard. The player must keep them at bay by tracking their movement on security cameras and attempt to survive the entire night at the restaurant.

23.     Through the present date, the Original Game is installed an estimated 1,787 times per day, even over a year after its first release.

24.     On or about March 16, 2015, Mr. Cawthon obtained a copyright registration in connection with the Original Game from the United States Copyright Office (Registration No. PA00019277262).

25.     Mr. Cawthon's copyright registration for the Original Game is uncontested.

26.     Following the success of the Original Game, on or about November 10, 2014, Mr. Cawthon released a sequel to the Original Game entitled "Five Nights at Freddy's 2" ("**FNAF 2**").

27.     Through the present date, FNAF 2 is installed an estimated 1,433 times per day, even over a year after its first release.

28.     Mr. Cawthon obtained a copyright registration for FNAF 2 from the United States Copyright Office on or about January 12, 2015 (Registration No. PA0001927442).

29.     Mr. Cawthon's copyright registration for FNAF 2 is uncontested.

30.     A third installment of the Five Nights franchise was released by Mr. Cawthon entitled "Five Nights at Freddy's 3" ("**FNAF 3**") on or about March 2, 2015.

31.     Through the present date, FNAF 3 is installed an estimated 1,237 times per day, even over nine months after its first release.

32.     Mr. Cawthon obtained a copyright registration for the FNAF 3 from the United States Copyright Office on or about April 15, 2015 (Registration No. PA0001952786).

33.     Mr. Cawthon's copyright registration for FNAF 3 is uncontested.

34.     Just before the one-year anniversary of the Original Game's release, on or about July 23, 2015, Mr. Cawthon released a fourth installment to the Five Nights computer game/mobile application franchise entitled "Five Nights at Freddy's 4" ("**FNAF 4**").

35.     Through the present date, FNAF 4 is installed an estimated 1,936 times per day, even over five months after its first release.

36.     Mr. Cawthon obtained a copyright registration for FNAF 4 from the United States Copyright Office on or about September 8, 2015 (Registration No. PA0001956899).

37.     Mr. Cawthon's copyright registration for FNAF 4 is uncontested.

38.     Along with the copyrights discussed above, Mr. Cawthon is the owner of two federal trademark registrations related to the Five Nights games in connection with Class 9 goods and services including, *inter alia*, computer game software and mobile applications. ("**Plaintiffs' Marks**").

39.     On or about June 16, 2015, Mr. Cawthon registered the mark "Five Nights at Freddy's" (Registration No. 4,755,325).

40.     On or about November 17, 2015, Mr. Cawthon registered the mark "FIVE NIGHTS AT FREDDY'S" (Registration No. 4,855,473).

41.     Plaintiffs' Marks are used in commerce in connection with all of the Five Nights computer games/mobile applications.

42.     Plaintiffs' Marks are also used in commerce in connection with all licensed Five Nights merchandise, including licensed plush toys of the Copyrighted Characters, as set forth below.

43.     In addition to Plaintiffs' Marks, "FNAF" is an acronym widely used by fans to refer to the Five Nights franchise and the related Copyrighted Characters.

44.     As such, "FNAF" is a widely recognizable, famous mark related to the Five Nights franchise.

45.     Plaintiffs have used the intellectual property discussed above in commerce in connection with the Five Nights games and related merchandise, including licensed plush toys of the Copyrighted Characters, as set forth below.

46.     The Five Nights games are available for purchase and download for personal computers on Valve Corporation's Steam digital distribution platform ("**Steam**").

47.     Through the present date, Steam sold over 700,000 copies of the Five Nights computer games in the United States.

48.     In addition to personal computers, the Five Nights games are also available for mobile devices through Apple Inc.'s App Store, Google Inc.'s Google Play Store and Amazon.com, Inc.'s Appstore ("**Amazon**").

49.     Through the present date, the Five Nights mobile applications have sold over 600,000 copies worldwide for Apple Inc.'s iPhone alone.

50.     In addition, through the present date, nearly 1,000,000 copies of the Five Nights mobile applications have been sold on Amazon in the United States.

### PLAINTIFFS' RELATED FIVE NIGHTS INTELLECTUAL PROPERTY

51.     In addition to the copyrights for the Five Nights games discussed above, Mr. Cawthon currently holds over 70 copyright registrations in connection with the Five Nights franchise.

52.     For example, the art work utilized in Five Nights was registered with the United States Copyright Office on or about August 28, 2014 (Registration No. VA0001930529).

53.     Mr. Cawthon also has numerous U.S. Copyrights for various depictions and versions of the characters within the Five Nights franchise.

54.     Indeed, Mr. Cawthon holds at least 8 copyrights for each of the Copyrighted Characters relating to different representations of those characters throughout the Five Nights franchise.

55.     The "Freddy Fazbear" ("**Freddy**") character was registered with the United States Copyright Office on or about June 9, 2015 (Registration No. VA0001968311) (the "**Freddy Copyright**").

56.     The Freddy Copyright relates to the following visual material:



57.     The Freddy Copyright is uncontested.

58.     The "Bonnie the Rabbit" ("**Bonnie**") character was registered with the United

States Copyright Office on or about June 9, 2015 (Registration No. VA0001968264) (the

"**Bonnie Copyright**").

59.     The Bonnie Copyright relates to the following visual material:



60.     The Bonnie Copyright is uncontested.

61.     The "Foxy the Pirate" ("**Foxy**") character was registered with the United States Copyright Office on or about June 9, 2015 (Registration No. VA0001968265) (the "**Foxy Copyright**").

62.     The Foxy Copyright relates to the following visual material:



63.     The Foxy Copyright is uncontested.

64.     The "Chica the Chicken" ("**Chica**") character was registered with the United States Copyright Office on or about October 22, 2014 (Registration No. VA000194455) (the "**Chica Copyright**").

65.     The Chica Copyright relates to the following visual material:



66.     The Chica Copyright is uncontested.

<strong><u>PLAINTIFFS' FIVE NIGHTS LICENSE AGREEMENTS</u></strong>

67.     Mr. Cawthon granted his company Scottgames a license for the copyright and trademark rights related to the Five Nights franchise, enabling Scottgames to enter into license agreements with third parties to exploit the aforementioned intellectual property.

68.     In addition to the Five Nights games, Plaintiffs have marketed and exploited the aforementioned intellectual property under a number of license agreements.

69.     For example, a major motion picture studio has optioned feature film rights relating to the Five Nights franchise.

70.     Plaintiffs have also entered into several major license agreements to create merchandise related to the Five Nights franchise.

71.     Indeed, Plaintiffs' authorized licensees already produce <u>licensed</u> plush toys of three (3) of the Copyrighted Characters through a license agreement with a third party.

72.     A licensee already produces the following <u>authorized</u> Freddy plush toy:



73.     The same licensee also produces the following <u>authorized</u> Bonnie plush toy:



74.     The same licensee also produces the following <u>authorized</u> Foxy plush toy:



## DEFENDANT'S WRONGFUL ACTS

75.    Defendant willfully and knowingly produces, promotes and distributes the Infringing Toys, which are unauthorized, unlicensed and infringing reproductions of the Copyrighted Characters.

76.    Through the present date, Defendant offers the Infringing Toys for sale on his Etsy store. *See* **Exhibit A**.

77.    Through the present date, Defendant offers the following Freddy plush toy for sale through his Etsy store:



78.     Defendant's Freddy plush toy infringes upon Plaintiffs' copyrights. *Compare* para. 77, *with* para. 56 *and* para. 72.

79.     Through the present date, Defendant offers the following Bonnie plush toy for sale through his Etsy store:



80.     Defendant's Bonnie plush toy infringes upon Plaintiffs' copyrights. *Compare* para. 79, *with* para. 59 *and* para. 73.

81.     Through the present date, Defendant currently offers the following Foxy plush

toy for sale through his Etsy store:



82.     Defendant's Foxy plush toy infringes upon Plaintiffs' copyrights. *Compare*

para. 81, *with* para. 62 *and* para. 74.

83.     Through the present date, Defendant currently offers the following Chica plush

toy for sale through his Etsy store:



84.     Defendant's Chica plush toy infringes upon Plaintiffs' copyrights. *Compare* para. 83, *with* para. 65.

85.     As discussed below, Defendant previously offered the plush toys listed in paras. 77-84 on his eBay store. *See* **Exhibit B**.

86.     Defendant previously posted links on www.facebook.com ("**Facebook**") under the name "FNAFToys.com" to advertise and promote the Infringing Toys. *See* **Exhibit C**.

87.     Upon information and belief, Defendant also uses www.pinterest.com ("**Pinterest**") to promote the Infringing Toys.

88.     In other words, Defendant has advertised, promoted and/or sold the Infringing Toys on Etsy, eBay, Facebook and Pinterest. *See supra* paras. 76-87.

89.     In doing so, Defendant uses Plaintiffs' Marks, the famous "FNAF" mark, the Copyrighted Characters' names and other Five Nights brand designators to advertise and promote the Infringing Toys. *See* **Exhibits A-C**.

90.     As discussed *supra*, Plaintiffs have used these marks in commerce and hold enforcement rights in and to these marks in connection with Five Nights computer games/mobile applications and related merchandise. *See supra* paras. 38-45.

91.     Plaintiff has not granted Defendant a license to use Plaintiffs' Marks, the famous "FNAF" mark or the Copyrighted Characters' names to advertise and/or promote the Infringing Toys.

92.     Defendant's use of the Plaintiffs' Marks, the famous "FNAF" mark and the Copyrighted Characters' names to advertise and/or promote the Infringing Toys infringes upon Plaintiffs' trademark rights.

**A SIDE-BY-SIDE COMPARISON OF THE LICENSED AND THE INFRINGING TOYS**

93.     In sum, as the following side-by-side representation demonstrates, the foregoing licensed plush toys and the Copyrighted Characters are obviously being infringed by the marketing of the Infringing Toys.

## The Licensed Plush Toys



## The Infringing Toys



## The Copyrighted Characters









## The Infringing Toys









**DEFENDANT'S WRONGFUL USE OF THE INFRINGING DOMAIN NAME**

94.     On or about August 29, 2015, Defendant registered the Infringing Domain Name.  www.FNAFToys.com through Launchpad, Inc. (HostGator). *See* **Exhibit D**.

95.     As noted *supra*, "FNAF" is a famous mark used by fans to refer to the Five Nights franchise.

96.     Upon information and belief, prior to Plaintiffs' attempts to remove Defendant's Infringing Toys, the Infringing Domain Name redirected internet traffic to Defendant's eBay page.

97.     Through the present date, the Infringing Domain Name redirects internet traffic to Defendant's Etsy store.

98.     Defendant's unauthorized use of the famous "FNAF" mark in the Infringing Domain Name attracts internet users to purchase the Infringing Toys.

99.     As discussed below, Defendant has reposted the Infringing Toys on his Etsy store three (3) times after the toys were removed by Etsy.

100.     As noted *supra* and *infra*, Defendant is selling the Infringing Toys on his Etsy store through the present date.

101.     As a result, Defendant profits from this unauthorized and unlicensed use of the Infringing Domain Name.

**DEFENDANT'S WRONGFUL CONDUCT ON FACEBOOK**

102.     As noted above, Defendant posts links on Facebook under the name "FNAFToys.com" to advertise and promote the Infringing Toys. *See* **Exhibit C**.

103.     For example, on or about November 6, 2015, Defendant posted a link on the

"FNAFToys.com" Facebook page to the Infringing Toys for sale on eBay that was "liked" by

3,502 Facebook users. *See Id*.

104.     Additionally, this post was "shared" by Facebook users 582 times. *See Id*.

105.     On or about November 20, 2015, Plaintiffs' counsel submitted a Digital

Millennium Copyright Act takedown notice to Facebook to remove Defendant's infringing posts

pursuant to the DMCA, 17 U.S.C. § 512(c)(3) ("**Takedown Notice**").

106.     Furthermore, in an email to Defendant on or about November 20, 2015,

Plaintiffs demanded that Defendant remove all unauthorized postings from the internet,

including, without limitation, posts made on Facebook, eBay and Pinterest.

107.     On or about November 21, 2015, Facebook notified Plaintiffs' counsel that

Defendant's page had been removed pursuant to the November 20, 2015 Takedown Notice.

108.     Through the present date, Defendant's Facebook page remains inaccessible.

**<u>DEFENDANT'S WRONGFUL CONDUCT ON EBAY AND</u>**
**<u>DEFENDANT'S ATTEMPTS TO CIRCUMVENT THE DMCA ON EBAY</u>**

109.     As noted above, Defendant previously offered the plush toys listed in paras. 77-

84 on his eBay store. *See* **Exhibit B**.

110.     On or about November 20, 2015, Plaintiffs' counsel demanded that Defendant

remove all unauthorized postings from the internet, including, without limitation, posts made on

Facebook, eBay and Pinterest in an email to Defendant.

111.     On or about November 23, 2015, Plaintiffs' counsel submitted a Takedown

Notice to eBay pursuant to the DMCA to remove Defendant's posts selling the Infringing Toys

under the username "phoenixtradingco20."

112.     On or about December 2, 2015, eBay notified Plaintiffs that it had removed Defendant's posts of the Infringing Toys.

113.      On or about December 9, 2015, Defendant reposted the Infringing Toys on eBay under the username "phoneixtradingco."

114.     In other words, after eBay removed the Infringing Toys posted by Defendant under the username "phoneixtradingco20," he reposted the same Infringing Toys under the username "phoneixtradingco."

115.     On or about December 11, 2015, Plaintiffs' counsel submitted a second Takedown Notice for the reposted Infringing Toys and requested, *inter alia*, that eBay suspend the store as a repeat offender.

116.     On or about December 21, 2015, eBay removed the Infringing Toys posted by Defendant under the username "phoneixtradingco."

### DEFENDANT'S INITIAL WRONGFUL CONDUCT ON ETSY

117.     As noted above, Defendant offers the plush toys listed in paras. 77-84 on his Etsy store under the username "Xiupan." *See* **Exhibit A**.

118.     On or about November 19, 2015, Plaintiffs' counsel submitted a Takedown Notice to Etsy to remove Defendant's infringing posts.

119.     On or about November 19, 2015, Etsy notified Plaintiffs' counsel that the Defendant's posts of the Infringing Toys were removed.

120.     On or about November 19, 2015 at 8:03 P.M., Defendant sent an email to Plaintiffs' counsel in response to the first Takedown Notice. The email included the following:

> First off, I apologize for infringing on your intellectual property. I
> am merely a big, and long time fan of your Five Nights at Freddy's

22

series! Previously, as there were no plushies available to the public, I simply wanted to give the public what they wanted. However, I now acknowledge that you have your own official plushies for sale.

That being said, is there any way we can perhaps purchase a license to sell from you, the creator, Mr. Scott Cawthon? Or perhaps give you a percentage of our sales in the form of royalties? I'm open to any offers you can think of Mr. Cawthon.
I have nothing but great respect for you and your Five Nights at Freddy's series. I hope we can do business together.

Sincerely,
Alan Hong

121.     On or about November 20, 2015, Plaintiffs declined to grant Defendant a

license. In addition, Plaintiffs demanded that Defendant remove all unauthorized postings from

the internet, including, without limitation, posts made on Facebook, eBay and Pinterest.

122.     On or about November 20, 2015 at 9:03 P.M., Defendant sent another email to

Plaintiffs' counsel. The email stated:

Look, I'm not a lawyer. I'm just a simple guy that loved this game and saw that other people loved this game too. There are a lot of fans out there that love these plushies. You guys are going to break their hearts! Why is Mr. Cawthon not interested in doing further business? It's a win-win if we can reach some kind of agreement. We can easily enter into a mutually beneficial business arrangement using the proper channels. Just please tell me what I have to do. I know Mr. Cawthon would not want to displease his loving fanbase!

123.     Plaintiffs did not agree to enter into any agreement with Defendant.

**DEFENDANT'S ATTEMPTS TO CIRCUMVENT THE DMCA ON ETSY**

124.     As noted above, on or about November 19, 2015, Defendant's posts on Etsy of

the Infringing Toys were removed pursuant to a Takedown Notice that was submitted by

Plaintiffs' counsel.

125.     On or about December 9, 2015, Defendant reposted the Infringing Toys on his Etsy store, again under the username "Xiupan."

126.     On or about December 11, 2015, Plaintiffs' counsel submitted a second Takedown Notice to Etsy to remove the Infringing Toys that Defendant reposted.

127.     On or about December 14, 2015, Etsy notified Plaintiffs that Defendant filed a counter-notice under 17 U.S.C. § 512(g) alleging that the Infringing Toys were removed as the result of a misidentification or mistake ("**Counter Notice**").

128.     On or about December 14, 2015, Defendant reposted the Infringing Toys again on Etsy. Defendant used the same username "Xiupan."

129.     On or about December 14, 2015, Plaintiffs' counsel submitted a third Takedown Notice to Etsy regarding Defendant's Infringing Toys.

130.     On or about December 15, 2015, Plaintiffs notified Etsy that Defendant is a repeat offender and requested, *inter alia*, that Etsy respond accordingly.

131.     On or about December 16, 2015, the Infringing Toys were again removed from Defendant's Etsy store.

132.     On or about December 22, 2015, Defendant again reposted the Infringing Toys on his Etsy store under the username "Xiupan."

133.     Through the present date, Defendant has reposted the Infringing Toys on his Etsy store three (3) times after they were first removed by Etsy and after Plaintiffs denied the Defendant the requested license to sell the Infringing Toys.

134.     Indeed, the Infringing Toys are available on the Defendant's Etsy store through the present date.

## CAUSES OF ACTION

### FIRST COUNT
### (Copyright Infringement: 17 U.S.C. §§ 106, 501)

135.     Plaintiffs repeat and incorporate by reference the allegations of each preceding paragraph as if fully set forth herein.

136.     As set forth above, Plaintiffs hold certain registered copyrights in connection with Five Nights, the artwork in connection with Five Nights and the Copyrighted Characters.

137.     Pursuant to Section 106 of the Copyright Act, 17 U.S.C. § 101 et seq., Plaintiffs, as the owners of these copyrights, have the exclusive rights to reproduce the copyrighted works, prepare derivative works based upon the copyrighted work and distribute copies of the copyrighted works to the public by sale.

138.     By reproducing, distributing and promoting Five Nights merchandise incorporating the Copyrighted Characters, and creating unauthorized derivative work in violation of Plaintiffs' exclusive right, Defendant has infringed Plaintiffs' copyrights in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

139.     Defendant's act of infringement is willful, intentional and purposeful, in disregard of and with indifference to Plaintiffs' rights.

140.     As a result of Defendant's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to actual damages and profits 17 U.S.C. § 504(c) for Defendant's infringement of Plaintiffs' copyrights.

141.     In the alternative, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's infringement of Plaintiffs' copyrights.

142.     In addition, Plaintiffs are further entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

143.     Plaintiffs are also entitled to prejudgment interest any damages awarded for Defendant's infringement of Plaintiffs' copyrights.

144.     Furthermore, Defendant's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated or measured. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502, 503, Plaintiffs are entitled to preliminary and final injunctive relief prohibiting Defendant from further infringing Plaintiffs' copyrights.

## SECOND COUNT
**(Federal Trademark Infringement: Section 43(a) of the Lanham Act, 15 U.S.C. § 1114(1))**

145.     Plaintiffs repeat and incorporate by reference the allegations of each preceding paragraph as if fully set forth herein.

146.     Plaintiffs hold enforcement rights in and to Plaintiffs' Marks which are federally registered, valid, subsisting and in full force and effect.

147.     Defendant had both actual and constructive notice of Plaintiffs' ownership and rights in Plaintiffs' Marks prior to Defendant's infringing use of Plaintiffs' Marks.

148.     Defendant has no right, license or authority to use Plaintiffs' Marks.

149.     Defendant adopted and continues to use in commerce Plaintiffs' Marks, and marks confusingly similar thereto, with full knowledge of Plaintiffs' superior rights, and with full knowledge that his infringing use of Plaintiffs' Marks was likely to cause confusion, mistake and/or deception.

150.     Defendant's conduct constitutes infringement of Plaintiffs' federal registration of same in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

151.     Moreover, Defendant's actions caused and are likely to continue to cause confusion, or to cause mistake or deception, as to an affiliation between Defendant and Plaintiffs, and to cause confusion, or to cause mistake or deception, to the effect that Plaintiffs approve of Defendant's use of Plaintiffs' Marks, all in violation of Section 43(a) of the Lanham Act.

152.     Defendant's ongoing acts of infringement are malicious, fraudulent, willful and deliberate.

153.     Plaintiffs are entitled to damages for the infringing acts of the Defendant pursuant to 15 U.S.C. § 1117, the amount of which to be determined by an accounting and subject to proof at trial.

154.     The knowing and intentional nature of Defendant's acts as set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a); as a result, Plaintiffs are entitled to recover costs and reasonable attorney's fees.

155.     In addition, Plaintiffs are entitled to an award of Defendant's profits for the Defendant's willful infringement under 15 U.S.C. § 1117.

156.     Plaintiffs are also entitled to an award of treble damages for the Defendant's willful use of a counterfeit mark under 15 U.S.C. § 1117.

157.     Furthermore, as a result of Defendant's infringement, Plaintiffs have suffered substantial damages, as well as the continuing loss of the goodwill and reputation Plaintiffs established in Plaintiffs' Marks. This continuing loss cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiffs have no adequate remedy at law.

Plaintiffs will continue to suffer irreparable harm and are entitled to preliminary and final injunctive relief to enjoin Defendant's conduct.

**THIRD COUNT**
**(Dilution, 15 U.S.C. § 1125(c))**

158.　　Plaintiffs repeat and incorporate by reference the allegations of each preceding paragraph as if fully set forth herein.

159.　　Plaintiffs hold enforcement rights in and to Plaintiffs' Marks which are federally registered, valid, subsisting, and in full force and effect.

160.　　Plaintiffs' Marks and the "FNAF" mark are famous and distinctive, as discussed above, and are entitled to protection against dilution by blurring or tarnishment.

161.　　Defendant had both actual and constructive notice of Plaintiffs' ownership and rights in Plaintiffs' Marks prior to Defendant's infringing use of Plaintiffs' Marks.

162.　　Defendant has no right, license or authority to use Plaintiffs' Marks.

163.　　Defendant adopted and commenced use in commerce of Plaintiffs' Marks and the "FNAF" mark, and marks confusingly similar thereto, after the marks had become famous and distinctive.

164.　　By using Plaintiffs' Marks and the "FNAF" mark in connection with the Infringing Toys and deceiving consumers as to the origin of the Infringing Toys, Defendant has injured and will continue to injure Plaintiffs' business reputation, has tarnished the distinctive quality of Plaintiffs' famous name and marks, and have lessened the capacity of Plaintiffs' famous name and marks to identify and distinguish Plaintiffs' goods and services, in violation of 15 U.S.C. § 1125(c).

165.     Defendant's ongoing acts of infringement are malicious, fraudulent, willful and deliberate.

166.     Plaintiffs are entitled to damages for the infringing acts of the Defendant pursuant to 15 U.S.C. § 1117, the amount of which to be determined by an accounting and subject to proof at trial.

167.     The knowing and intentional nature of Defendant's acts as set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a); as a result, Plaintiffs are entitled to recover costs and reasonable attorney's fees.

168.     In addition, Plaintiffs are entitled to an award of Defendant's profits for the Defendant's willful infringement under 15 U.S.C. § 1117.

169.     Plaintiffs are also entitled to an order for the destruction of infringing articles in the possession of the Defendant pursuant to 15 U.S.C. § 1118.

170.     Furthermore, as a result of Defendant's infringement, Plaintiffs have suffered substantial damages, as well as the continuing loss of the goodwill and reputation Plaintiffs established in Plaintiffs' Marks. This continuing loss cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiffs have no adequate remedy at law. Plaintiffs will continue to suffer irreparable harm and are entitled to preliminary and final injunctive relief to enjoin Defendant's conduct.

**FOURTH COUNT**
**(Unfair Competition, 15 U.S.C. § 1125(a))**

171.     Plaintiffs repeat and incorporate by reference the allegations of each preceding paragraph as if fully set forth herein.

172.     Plaintiffs hold enforcement rights in and to Plaintiffs' Marks which are federally registered, valid, subsisting, and in full force and effect.

173.     Defendant has no right, license or authority to use Plaintiffs' Marks.

174.     Defendant had both actual and constructive notice of Plaintiffs' ownership and rights in Plaintiffs' Marks prior to Defendant's infringing use of Plaintiffs' Marks.

175.     Defendant has deliberately and willfully attempted to trade on Plaintiffs' long-standing and hard-earned goodwill in Plaintiffs' Marks and the reputation established by Plaintiffs in connection with the Five Nights products and services, as well as in order to confuse consumers as to the origin and sponsorship of Defendant's goods and to pass off their products and services in commerce as those of Plaintiffs.

176.     Defendant's unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiffs of the ability to control the consumer perception of Five Nights products and services offered under Plaintiffs' Marks, placing the valuable reputation and goodwill of Plaintiffs in the hands of Defendant.

177.     Defendant's conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Defendant and the Infringing Toys with Plaintiffs, and as to the origin, sponsorship, or approval of Defendant and the Infringing Toys in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

178.     The knowing and intentional nature of Defendant's acts as set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a); as a result, Plaintiffs are entitled to recover costs and reasonable attorney's fees.

179.     Plaintiffs are entitled to damages for the acts of unfair competition of the Defendant pursuant to 15 U.S.C. § 1117, the amount of which to be determined by an accounting and subject to proof at trial.

180.     Furthermore, as a result of Defendant's conduct, Plaintiffs have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established in Plaintiffs' Marks. This continuing loss cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiffs have no adequate remedy at law. Plaintiffs will continue to suffer irreparable harm and are entitled to preliminary and final injunctive relief to enjoin Defendant's conduct.

## FIFTH COUNT
### (Misrepresentation under the Digital Millennium Copyright Act: 17 U.S.C. § 512(f))

181.     Plaintiffs repeat and incorporate by reference the allegations of each preceding paragraph as if fully set forth herein.

182.     Defendant knowingly and materially misrepresented in a Counter Notice under the DMCA, 17 U.S.C. § 512(c)(3) that the Infringing Toys were removed or disabled by mistake or misidentification.

183.     Defendant knew that the Infringing Toys were not removed or disabled by mistake or misidentification and had previously acknowledged Plaintiffs' intellectual property rights and infringing upon their intellectual property. *See supra* para. 120, 122.

184.     Upon information and belief, Etsy relied upon this misrepresentation and reposted the Infringing Toys.

185.     As a result, Plaintiffs have been damaged.

186.     As a result of Defendant's misrepresentation, Defendant is liable for Plaintiffs' damages including costs and attorney's fees incurred by Plaintiffs pursuant to 17 U.S.C. § 512(f).

## SIXTH COUNT
**(Violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))**

187.     Plaintiffs repeat and incorporate by reference the allegations of each preceding paragraph as if fully set forth herein.

188.     Plaintiffs hold enforcement rights in and to Plaintiffs' Marks which are federally registered, valid, subsisting, and in full force and effect.

189.     In addition, as discussed above, the "FNAF" acronym is a famous mark used by fans to refer to the Five Nights franchise.

190.     As discussed above, Defendant registered and uses the Infringing Domain Name.

191.     The Infringing Domain Name contains the famous "FNAF" mark.

192.     Defendant registered the Infringing Domain Name with bad faith intent to profit from Plaintiffs' Marks by registering and using the Infringing Domain Name and using it to advertise and promote the sale of the Infringing Toys, as discussed above.

193.     At the time Defendant registered the Infringing Domain Name, it was confusingly similar to or dilutive of Plaintiffs' Marks, and it remains confusingly similar to or dilutive of Plaintiffs' Marks.

194.     The Infringing Domain Name does not resolve to websites owned by Plaintiffs; instead, it resolves to the Defendant's eBay and Etsy stores where Defendant profits from the domain name's use.

195.     Defendant did not believe or could not believe his use of the Infringing Domain Name constituted fair use or was otherwise lawful.

196.     Defendant's acts constitute unlawful cybersquatting. Pursuant to 15 U.S.C. § 1125(d)(1)(c), Plaintiffs are entitled to an order transferring the Infringing Domain Name to Plaintiffs.

197.     Defendant's acts of infringement are, and have been willful. Accordingly, Plaintiffs are entitled to recover defendant's profits, as well as the costs of the suit and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1117(a).

198.     As an alternative to their actual damages, Plaintiffs are entitled to recover statutory damages in an amount not less than $1,000 and not more than $100,000, per domain name, as the court considers just, pursuant to 15 U.S.C. § 1117(d).

199.     Furthermore, as a result of Defendant's wrongful registration and use of the Infringing Domain Name, Plaintiffs have suffered substantial damages, as well as the continuing loss of the goodwill and reputation established in Plaintiffs' Marks. This continuing loss cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiffs have no adequate remedy at law. Plaintiffs will continue to suffer irreparable harm and are entitled to preliminary and final injunctive relief to enjoin Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an Order and Judgment as follows:

1.     Entry of an order (on a preliminary and permanent basis) requiring that Defendant and his officers, agents, servants, employees, owners and representatives, and all other persons or entities be ordered to:

(a)      Disclose all websites and other locations where the Infringing Toys are sold;

(b)      Disclose any and all products infringing upon Plaintiffs' intellectual property;

(c)      Disclose the means by which the Infringing Toys are manufactured and where the manufacturing occurs;

(d)      Turn over any and all of the Infringing Toys and any other products infringing upon Plaintiffs' intellectual property;

(e)      Provide an accounting of all inventory of the Infringing Toys and any other products infringing upon Plaintiffs' intellectual property;

(f)      Provide an accounting of any and all sales of the Infringing Toys and any other products infringing upon Plaintiffs' intellectual property;

(g)      Remove the Infringing Toys and any and all other products infringing upon Plaintiffs' intellectual property from any and all websites or other points of sale;

(h)      Immediately cease any and all infringement of Plaintiffs' intellectual property;

(i)      Immediately cease any and all infringing use of Plaintiffs' Marks, including the use of the Infringing Domain Name, www.FNAFToys.com;

(j)      Immediately transfer to Plaintiffs any and all domain names that include or relate to Plaintiffs' Marks, including, without limitation, www.FNAFToys.com; and

(k)      File with this Court and serve upon Plaintiffs within thirty (30) days of the entry of an injunction a written report under oath describing in detail the manner and form in

which Defendant complied with the injunctive relief set forth in this section, pursuant to 15 U.S.C. § 1116(a);

2.      Ordering Defendant to pay a judgment in the amount of Plaintiffs' actual damages and any additional profits of Defendant;

3.      In the alternative, ordering Defendant to pay a judgment of statutory damages for all of Defendant's infringements in an amount the Court considers just under 17 U.S.C. § 504 (c) and 15 U.S.C. § 1117;

4.      In the alternative, ordering Defendant to pay a judgment of treble damages under 15 U.S.C. § 1117(b);

5.      Ordering the destruction of infringing articles in the possession of the Defendant pursuant to 15 U.S.C. § 1118;

6.      Ordering Defendant to pay Plaintiffs' reasonable attorney's fees and costs of this action pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117(a) and 17 U.S.C. § 512(f);

7.      Ordering Defendant to pay pre-judgment interest to Plaintiffs for Plaintiffs' copyright claims;

8.      Ordering Defendant to pay post-judgment interest to Plaintiffs pursuant to 28 U.S.C. § 1961; and

9.      Granting Plaintiffs such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a jury trial of all issues that may be tried to a jury in this action.

DATED this 23rd day of December, 2015.

        RAY QUINNEY & NEBEKER P.C.


        /s/ Arthur B. Berger
        Arthur B. Berger
        Michael K. Erickson

        Of Counsel:

        Steven L. Procaccini
        Christopher Ko
        NISSENBAUM LAW GROUP, LLC

        *Attorneys for Plaintiffs*